IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

UNIVERSITY OF PITTSBURGH
MEDICAL CENTER,

      Plaintiff,

v.                    CIVIL ACTION NO. 2:06-0890

MARTHA Y. WALKER, et al.,

      Defendants.


MEMORANDUM OPINION AND ORDER

      Pending before the court are defendants' motion to dismiss the University of Pittsburgh Medical Center's request for a refund (Doc. No. 17); motion to dismiss Kelly D. Ambrose, Charlene A. Vaughan, Nora Antlake, and Jeanne Cress as defendants (Doc. No. 21); and motion to dismiss the West Virginia Bureau for Medical Services as a defendant (Doc. No. 41).  For the reasons set forth below, these motions are **GRANTED**.

## I.  Factual and Procedural Background

      Plaintiff University of Pittsburgh Medical Center ("UPMC") filed its complaint[1] in this court on October 20, 2006, alleging

---

[1]  On December 20, 2006, UPMC filed a motion to amend the complaint to include in its caption the State of West Virginia Department of Health and Human Resources Bureau for Medical Services, which was inadvertently omitted from the caption, but referred to throughout the body of the complaint.  (Doc. No. 29.) The court granted the unopposed motion on January 11, 2007 (Doc. No. 35), and the amended complaint was filed on February 21, 2007 (Doc. No. 46).  Accordingly, the court will refer to the amended complaint for the remainder of the opinion.

jurisdiction in this 42 U.S.C. § 1983 suit pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3).  (Doc. No. 1 at 1-3.)  UPMC is a Pennsylvania corporation providing numerous health care services, including organ transplantation.  (Doc. No. 46 at 3-4.) Defendant State of West Virginia Department of Health and Human Resources Bureau for Medical Services ("the Bureau") is described in the complaint as being "responsible for providing medical services and/or treatment for individuals who qualify for such state benefits through the Department of Health and Human Resources' ["the Department"] Medicaid Program."  (Id. at 4.)

The complaint also names as defendants in their official capacities Martha Y. Walker,[2] Secretary of the Department; Nancy Atkins, Commissioner of the Bureau; Kelly D. Ambrose, Senior Assistant Attorney General of the State of West Virginia; Charlene A. Vaughan, General Counsel/Deputy Attorney General; Nora Antlake, Legal and Regulatory Services Director of the Bureau; and Jeanne Cress, Director of the Office of Quality and Program Integrity.  (Id. at 1-2.)

UPMC describes this suit as a challenge to the constitutionality of the Bureau's application of a Medicaid Program instruction that caps payments for transplant procedures

---

[2]  Although the complaint originally named Paul L. Nesbaum, former Secretary of the State of West Virginia Department of Health and Human Resources, current Secretary Martha Y. Walker is substituted as the correct party pursuant to Federal Rule of Civil Procedure 25(d)(1).  (See Doc. No. 38 at 4 n.9.)

at a maximum of $75,000.00, regardless of other procedures performed in conjunction with the transplant.  (<u>Id.</u> at 2.) Plaintiff, which has been granted in-state medical provider status by the Bureau, contends that this cap is not enforced with respect to medical providers physically located in West Virginia. (<u>Id.</u>)  UPMC alleges in the alternative that "an overwhelmingly disproportionate number of transplants performed on West Virginia residents are performed outside of the state by out of state health care providers and facilities." (<u>Id.</u> at 2-3.)  In adopting and applying the West Virginia Medicaid Program ("the Program") as the Bureau has, plaintiff alleges the Bureau has violated and continues to violate the Commerce Clause of the United States Constitution at Article I, Section 8.  (<u>Id.</u>)

     Plaintiff's complaint contains two counts, each alleging a Commerce Clause violation.  In Count One, UPMC asserts that the system the Bureau has adopted for the submission and processing of healthcare providers' bills for Medicaid reimbursement led to a dispute between the parties as to whether UPMC had been overpaid by several hundred thousand dollars for transplant services it provided between January 1, 1998, and January 1, 2003.  (<u>Id.</u> at 5-7.)  The complaint states that, "[u]nder protest, Plaintiff refunded the amount of $610,764.87 to the Bureau for Medical Services via letter dated June 24, 2004." (<u>Id.</u> ¶ 30.)  Count One goes on to assert that the Bureau applies

-3-

this method of calculating reimbursement amounts arbitrarily to the detriment of out-of-state healthcare providers, while permitting providers located in West Virginia to receive "full reimbursement" for procedures performed.  (Id. at 9.)  In Count Two, UPMC reasserts the same allegations contained in Count One, but adds an alternative theory that the Bureau's method of calculating reimbursement payments "is being applied to interstate healthcare providers to shift the cost burden of performing transplants to non-resident healthcare providers." (Id. at 10.)

For relief, plaintiff requests a declaratory judgment to the effect that defendants committed the acts set out in Counts One and Two, and that this conduct constitutes a violation of the Commerce Clause of the United States Constitution.  (Id. at 10-11.)  UPMC further seeks an injunction prohibiting defendants from continuing the above conduct.  (Id. at 11.)  Finally, plaintiff requests a refund for all transplant procedures for which the reimbursement was previously capped as described above. (Id.)

Defendants have filed a motion to dismiss plaintiff's request for a refund (Doc. No. 17); a motion to dismiss Kelly D. Ambrose, Charlene A. Vaughan, Nora Antlake, and Jeanne Cress as parties defendant (Doc. No. 21); and a motion to dismiss the Bureau as a party defendant (Doc. No. 41).  The first two motions

-4-

have been fully briefed, and although no response was filed to defendants' motion to dismiss the Bureau, this motion is also ripe for adjudication.

## II.  **Standard of Review**

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss a claim for failure to state a claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6).  When reviewing such a motion to dismiss, this court accepts as true the facts as alleged in the complaint, views them in the light most favorable to the plaintiff, and recognizes that dismissal is inappropriate unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts that could be proved in support of his claim.  See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Randall v. United States, 30 F.3d 518, 522 (4th Cir. 1994).  Plaintiff must allege facts in the complaint sufficient to support the claimed legal conclusions.  See Migdal v. Rowe Price-Fleming Int'l, Inc., 248 F.3d 321, 326 (4th Cir. 2001).  Finally, the court notes that the Fourth Circuit has opined that "a rule 12(b)(6) motion should be granted only in very limited circumstances."  Rogers v. Jefferson-Pilot Life Ins. Co., 883 F.2d 324, 325 (4th Cir. 1989).

### III.  Analysis

**A.   Motion to Dismiss Plaintiff's Request for Refund**

To the extent the complaint seeks a refund for past transplant procedures, defendants move to dismiss on the basis that this relief is barred by the Eleventh Amendment to the United States Constitution,[3] and that it falls outside the exception to Eleventh Amendment immunity described in Ex parte Young, 209 U.S. 123 (1908).  As the Fourth Circuit Court of Appeals has explained, the Ex parte Young exception "allows private citizens, in proper cases, to petition a federal court to enjoin State officials in their official capacities from engaging in future conduct that would violate the Constitution or a federal statute."  Antrican v. Odom, 290 F.3d 178, 184 (4th Cir. 2002).  Actions brought pursuant to Ex parte Young, therefore, may seek only prospective injunctive relief.  Id. at 186.  Awards of retroactive monetary relief remain barred by the Eleventh Amendment.  See Edelman v. Jordan, 415 U.S. 651, 668-69 (1974) (holding that, because the state is the real party in interest in an action for recovery of money from the state, Eleventh Amendment immunity applies).

_____

[3] "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

In arguing whether plaintiff's request for a refund is permissible under the doctrine of Ex parte Young, the parties cite CSX Transportation, Inc. v. Board of Public Works of the State of West Virginia, 138 F.3d 537 (4th Cir. 1998). In CSX, the Fourth Circuit reviewed a district court's determination that Ex parte Young relief was not available in a suit brought by two railroads against the state board of public works with regard to certain taxes imposed against the railroads. Id. at 538. While litigation over the taxes was ongoing, the railroads unilaterally deducted from their tax payments the amount they alleged to be discriminatory. Id. at 539. In reversing the district court and holding that an injunction to prevent the collection of the withheld taxes did not constitute retrospective relief, the Fourth Circuit reasoned that the railroads were not seeking a refund, because "the money allegedly illegally assessed [was] still safely in their pockets." Id. at 541-42. The court further explained that "the Railroads require neither a cash refund nor a credit against past taxes paid. . . . They seek an injunction barring the future collection of the part of taxes illegally assessed, which portion they have withheld and refused to pay, although they have paid the balance." CSX, 138 F.3d at 541 n.5.

It is clear from the complaint that UPMC's situation is quite different. The complaint states that UPMC paid the

-7-

disputed amount under protest in June of 2004 (Doc. No. 46 ¶ 30),
and that it now seeks "a refund" for all transplant procedures
for which its reimbursement was previously capped (Id. at 11).
Defendants' motion to dismiss this request for a refund is
therefore granted.

One further point with regard to this motion remains to be
resolved, however.  In its response to defendants' motion to
dismiss, plaintiff concludes by asserting that it "also has
sought damages and made claims against the state officials that
have impermissibly violated its federal rights under the Commerce
Clause," and that the Eleventh Amendment "does not erect a
barrier against suits as brought against state officials." (Doc.
No. 32 at 3 (citing Hafer v. Melo, 502 U.S. 21, 31 (1991).)
Plaintiff's reliance on Hafer is misplaced.  In that case, the
United States Supreme Court clarified that the Eleventh Amendment
does not bar suits for damages against state officials sued in
their personal – as opposed to official – capacities pursuant to
42 U.S.C. § 1983.  Hafer, 502 U.S. at 31.  In this action,
however, plaintiff could not have been more explicit in stating
that "[d]efendants are sued in their official capacities." (Doc.
No. 46 ¶ 6.)  Accordingly, to the extent UPMC contends that the
complaint states a claim for damages against the named state
officials, this claim is also dismissed.

**B.    Motion to Dismiss Defendants Ambrose, Vaughan, Antlake, and
       Cress**

Defendants further move for the dismissal of defendants
Ambrose, Vaughan, Antlake, and Cress on the basis that they are
state employees, rather than state officials.  (Doc. No. 23
(citing <u>Boggess v. Housing Auth. Of the City of Charleston</u>, 273
F. Supp. 2d 729 (S.D. W. Va. 2003)(Stanley, Mag.).)  Defendants
argue that the complaint makes no allegations as to these
defendants in their official capacities, nor does it set forth
how they may have violated the law.  (Doc. No. 23 at 4.)  Rather,
the "complaint merely contains a recitation of the general job
duties of all the named Defendants and actually serves to weaken
any potential argument that the same are state officials."  (<u>Id.</u>)

Plaintiff counters that, with regard to their actions at
issue in this matter, these defendants "acted under color of
state law and exercised the state's power with regard to the
performance of [a] public duty that is continuing in nature as
required by [<u>Boggess</u>.]"  (Doc. No. 31 at 1.)  Additionally,
plaintiff cites defendant Cress' testimony at a prior evidentiary
hearing that she was responsible for interpretation of the
regulation at issue.[4]  (<u>Id.</u> at 2.)

---

[4]  Although plaintiff argues in its response that Cress is a
proper defendant because she has allegedly admitted that she was
responsible for the interpretation of the regulation, the court
must limit its inquiry at this stage to the allegations actually
contained in the complaint, as defendants' motion presented no
matters outside the pleading.  <u>See</u> Fed. R. Civ. P. 12(b).

The Boggess case cited by the parties did not involve an Ex parte Young action, and is therefore inapposite to the case before this court.  Nonetheless, defendants' motion to dismiss must be granted as to these four defendants.  As the Supreme Court explained in Ex parte Young:

> In making an officer of the State a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional it is plain that such officer must have some connection with the enforcement of the act, or else it is merely making him a party as a representative of the State, and thereby attempting to make the State a party.

Ex parte Young, 209 U.S. 123, 157 (1908).  The Fourth Circuit Court of Appeals has further explained that "Ex parte Young requires a 'special relation' between the state officer and the challenged statute to avoid the Eleventh Amendment's bar." Waste Mgmt. Holdings, Inc. v. Gilmore, 252 F.3d 316, 331 (4th Cir. 2001)(citing Ex parte Young, 209 U.S. at 157).  Moreover, the fact that an official has general authority to enforce state laws is insufficient to make that official a proper party to litigation under this doctrine.  Id. (citing Children's Healthcare is a Legal Duty, Inc. v. Deters, 92 F.3d 1412, 1416 (6th Cir. 1996)).

"Young does not apply when a defendant state official has neither enforced nor threatened to enforce the allegedly unconstitutional state statute." Children's Healthcare, 92 F.3d at 1415.  This enforcement requirement has been applied

-10-

frequently by federal courts.  See Okpalobi v. Foster, 244 F.3d 405, 415 (5th Cir. 2001); Westco Corp. v. School Dist. of Philadelphia, 6 F.3d 108, 113 (3d Cir. 1993)(citing Rode v. Dellarciprete, 845 F.2d 1195, 1209 n.9 (3d Cir. 1988)); Long v. Van de Kamp, 961 F.2d 151, 152 (9th Cir. 1992); Kelley v. Metropolitan County Bd. Of Educ., 836 F.2d 986, 990-91 (6th Cir. 1987).

Plaintiff's complaint makes the following allegations as to defendants Ambrose, Vaughan, Antlake, and Cress:

9.   Defendant Kelly Ambrose is the Senior Assistant Attorney General of the State of West Virginia and has the duty to give legal opinions and advice upon questions of law consistent with State and Federal law.

. . .

11.  Defendant Charlene A. Vaughan is the General Counsel/Deputy Attorney General of the State of West Virginia Health and Human Resources Division and has the duty to give legal opinions and advice upon questions of law consistent with State and Federal law.

12.  Defendant Nora Antlake is Legal and Regulatory Services Director for the State of West Virginia Bureau of Medical Services and has the duty to give legal opinions and advice upon questions of law consistent with State and Federal law.

13.  Defendant Jeanne Cress, Director of the Office of Quality and Program Integrity and has the duty to conduct payment and reimbursement determinations and investigations in a manner consistent with Federal and State Law.

-11-

            14.  Defendants are acting under color of State law when
                 they enforce, supervise, or apply the West Virginia
                 Medicaid Program.

(Doc. No. 46 ¶¶ 9, 11-14.)

        With regard to defendants Ambrose, Vaughan, and Antlake,
there can be no doubt that the above allegations are insufficient
to link the three defendants to the challenged conduct.  An
allegation of a general duty to give accurate legal opinions and
advice does not begin to approach the requirement that the
officer bear a "special relation" to the challenged regulation,
let alone that the officer played any role in its enforcement.
Similarly, although plaintiff alleges defendant Cress has a duty
to determine payment and reimbursement matters consistently with
the law, no allegation is made that Cress is responsible for
determining whether or how to enforce the challenged regulation.

        Furthermore, although the complaint makes the blanket
allegation that defendants are acting under color of State law
when they enforce the Medicaid Program, it does not allege that
any of these four defendants actually took part in the
enforcement of the challenged regulation, nor that they violated
their respective duties in any way.  The motion to dismiss is
therefore granted as to these four defendants.  As defendants
acknowledge, "the continued presence of Secretary Walker and
Commissioner Atkins, who have previously been identified as the
state officials responsible for the implementation of the

                            -12-

policies and programs complained of in this civil action, allows this matter to proceed to obtain prospective relief." (Doc. No. 42 at 4-5.)

**C.   Motion to Dismiss the West Virginia Bureau for Medical Services**

Finally, defendants have filed a motion to dismiss the West Virginia Bureau for Medical Services on Eleventh Amendment grounds. (Doc. No. 41.) Defendants argue that the Bureau is an arm of the State of West Virginia such that the Eleventh Amendment affords it immunity from this suit. (Id. at 1.) Plaintiff has filed no response to the motion.

Political subdivisions, such as counties and municipalities, fall outside the scope of Eleventh Amendment immunity, but the immunity does apply to an "arm of the State." Kitchen v. Upshaw, 286 F.3d 179, 184 (4th Cir. 2002)(citing Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 280 (1977)). The line between the two categories is unclear, and in making the distinction, courts are to consider the purposes of the Eleventh Amendment, paying particular attention to "'whether a judgment against the government entity would have to be paid from the State's treasury.'" Kitchen, 286 F.3d at 184 (quoting Cash v. Greenville County Bd. Of Education, 242 F.3d 219, 223 (4th Cir. 2001)). If the judgment will not require payment from the State treasury, the court must then determine whether the relationship between the entity and the State is so close that it implicates

-13-

the "dignity of the State as a sovereign."  <u>Cash</u>, 242 F.3d 219, 224.  This question requires consideration of three additional factors: (1) the degree of control the State has over the entity; (2) whether the entity deals with local or statewide concerns; and (3) how the entity is treated by State law.  <u>Id.</u>

Because the court has now dismissed plaintiff's request for a refund, the court has only to consider whether an action against the Bureau for prospective injunctive relief may survive, applying the analysis set forth above.  As defendants observe, the first and third factors weigh heavily in favor of a finding that the Bureau is an arm of the State.  Pursuant to West Virginia Code Section 5F-1-2, the head of the Department is appointed by and serves at the will and pleasure of the Governor, with the Senate providing its advice and consent at the appointment stage.  In this case, therefore, West Virginia law clearly allows the entity very little, if any, autonomy.  With regard to the second factor, there can be no doubt that the Bureau's administration of the State Medicaid Program is a matter of statewide concern.  Indeed, the complaint does not appear to contemplate any concerns on the part of the Bureau that might be characterized as local in nature.  Because the Bureau is an "arm of the State" for purposes of Eleventh Amendment immunity, the defendants' motion to dismiss the Bureau is granted.

-14-

## IV.  Conclusion

For the reasons set forth above, defendants' motion to dismiss the University of Pittsburgh Medical Center's request for a refund (Doc. No. 17); motion to dismiss Kelly D. Ambrose, Charlene A. Vaughan, Nora Antlake, and Jeanne Cress as parties defendant (Doc. No. 21); and motion to dismiss the West Virginia Bureau for Medical Services as a party defendant (Doc. No. 41) are hereby **GRANTED**.  Additionally, pursuant to Federal Rule of Civil Procedure 25(d)(1), Martha Y. Walker, Secretary of the State of West Virginia Department of Health and Human Resources, is **SUBSTITUTED** for former Secretary Paul L. Nesbaum.

The Clerk is directed to send copies of this Memorandum Opinion and Order to all counsel of record.

It is **SO ORDERED** this 30th day of May, 2007.

ENTER:

David A. Faber
Chief Judge